JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-4650 JGB (ACCVx)** | Date | November 20, 2026 |
|---|---|---|---|
| Title | ***Pierre Rhodan v. Sysco Riverside, Inc., et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings: Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 15); and (2) VACATING the November 30, 2026 Hearing (IN CHAMBERS)**

Before the Court is plaintiff Pierre Rhodan's ("Rhodan" or "Plaintiff") motion to remand pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. ("Motion," Dkt. No. 15.) The Court determines that this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The Court **VACATES** the November 30, 2026 hearing.

## I. BACKGROUND

On July 7, 2026, Plaintiff Pierre Rhodan filed a complaint against defendants Sysco Riverside Inc. ("Sysco"), Demion Lewis, and does 1 through 25 (collectively, "Defendants") in the Superior Court of California for the County of Riverside. ("Complaint," Dkt. No. 1, Exh. 2.) Plaintiff alleges nine causes of action: (1) failure to provide reasonable accommodation pursuant to California Government Code § 12940, et seq. ("FEHA"); (2) failure to engage in a good-faith interactive process pursuant to FEHA; (3) harassment because of disability and/or race pursuant to FEHA; (4) discrimination because of disability and/or race pursuant to FEHA; (5) retaliation because of disability pursuant to FEHA; (6) whistleblower retaliation pursuant to California Labor Code § 1102.5(a); (7) retaliation for health and safety complaint pursuant to California Labor Code §§ 6310 and 6311; (8) failure to prevent discrimination, harassment, and/or retaliation pursuant to FEHA; and (9) wrongful termination in violation of public policy. (Compl. ¶¶ 31-118.)

The case was removed to this Court on August 7, 2026. ("NOR," Dkt. No. 1.) Defendant's NOR indicates that the Complaint was served on July 10, 2026. (NOR at 3.) Defendant claims that removal is proper under the complete preemption doctrine because "Plaintiff's Complaint asserting state law claims is completely preempted by Section 301 of the Labor Management Relations Act[,]" which preempts state law claims that are "substantially dependent" upon analysis of the terms in a collective bargaining agreement. (Id. at 4-5.) Defendant contends Plaintiff's employment was governed by the collective bargaining agreement ("CBA") between Sysco and Teamsters Local Union Nos. 683 and 495. (Id. at 5.) The CBA's article covers issues such as the collective bargaining representative, employee definition and probationary period, union security and membership requirement, management rights, discipline and work rules, grievance and arbitration procedures, wage rates and classifications including freezer premium, seniority, bidding, layoff and recall, hours of work and overtime including flexible scheduling, warehouse classifications, and work assignments. (Id.) Defendant alleges that because Plaintiff's claims "are inextricably intertwined with, and substantially dependent upon, the terms of the CBA[,]" all of Plaintiff's causes of action require interpretation of the relevant CBA provisions. (Id. at 6.)

## II. LEGAL STANDARD

### A. Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013) (internal quotation omitted). As such, federal courts have original jurisdiction only over civil actions in which a federal question exists or in which there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "[C]omplete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008).

The party seeking removal has the burden of establishing federal jurisdiction. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (internal citation omitted). Removability of an action is "determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a [defendant's] duty to make further inquiry." Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). However, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006)) (citation modified). Given this strong presumption against removal jurisdiction, "the court resolves all ambiguity in favor of remand to state court." Id. (quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)).

**B. Subject Matter Jurisdiction and Complete Preemption Doctrine**

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). "Subject-matter jurisdiction can never be waived or forfeited." Gonzalez v. Thaler, 565 U.S. 134, 141 (2012). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). There are two bases for federal subject matter jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

To determine whether it has federal question jurisdiction in an action, a court follows the well-pleaded complaint rule and considers only whether a federal question is presented on the face of the plaintiff's complaint. Taylor v. Anderson, 234 U.S. 74, 75 (1914); see also City of Oakland v. BP PLC, 969 F.3d 895 (9th Cir. 2020). Defenses or counterclaims raised in a defendant's answer—even if certain to be raised—cannot independently establish subject matter jurisdiction. Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 830 (2002). Two principles guide federal courts' adherence to the well-pleaded complaint rule: first, as "the master of the complaint," the plaintiff is entitled to avoid federal jurisdiction by exclusive reliance on state law; second, allowing a defense or counterclaim to establish federal question jurisdiction "would radically expand the class of removable cases, contrary to the 'due regard for the rightful independence of state governments' that our cases addressing removal require." Holmes, 535 U.S. at 831–32; Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) ("The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.").

An exception to the "well-pleaded complaint rule," the "complete preemption doctrine" confers exclusive federal jurisdiction over a claim "where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action." Dennis v. Hart, 724 F.3d 1249, 1254 (9th Cir. 2013). "The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the [Labor Management Relations Act ("LMRA")]," which "vests jurisdiction in federal courts over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Caterpillar, 482 U.S. at 393–94; Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005) (citation modified) (quoting 29 U.S.C. § 185(a)). For courts to exercise jurisdiction under the complete preemption doctrine, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense." Valles, 410 F.3d at 1076 (quoting Cramer v. Consolidated Freightways, 255 F.3d 683, 699 (9th Cir. 2001) (en banc) (as amended)).

//
//

## III. DISCUSSION

### A. Removal Was Timely.

Defendant Sysco's removal was timely. A defendant has thirty days after receipt by or service on that defendant of the initial pleading or summons to file the notice of removal. 28 U.S.C. § 1446(b)(2)(B). On July 10, 2026, Plaintiff served Sysco with the Complaint. (NOR at 3.) Defendant filed its NOR on August 7, 2026, within the thirty-day period. (Dkt. No. 1.)

### B. All Defendants Consented to Removal.

Defendant Lewis has not yet been served and is not required to join in the petition for removal. (NOR at 4; see 28 U.S.C. § 1446(b)(2)(A).) Nonetheless, Sysco certifies that Mr. Lewis has consented to the removal. (NOR at 4.) Sysco's averment of Mr. Lewis's non-opposition is sufficient to show Defendants' unanimous consent. Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient.").

### C. The Complete Preemption Doctrine Does Not Confer Federal Jurisdiction over Plaintiff's Causes of Action.

Defendant removed Plaintiff's Complaint on the basis that his causes of action are preempted because the claims necessarily arise out of and/or require a substantial interpretation of Plaintiff's governing CBA concerning probationary status, seniority, job classifications, work assignments, bidding procedures, discipline, and discharge. (NOR at 6.)

As the Supreme Court has made abundantly clear, "individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law." Caterpillar, 482 U.S. at 396. Courts in the Ninth Circuit follow a two-step analysis to determine whether a state law claim is preempted by § 301 of the LMRA and hence removable. First, courts evaluate "whether the cause of action involves a right conferred by state law, as opposed to by a labor contract." Garcia v. Serv. Emps. Int'l Union, 993 F.3d 757, 764 (9th Cir. 2021). "If the labor contract alone creates the right, the claim is preempted and the analysis ends." Id.

Second, if the right underlying the state law claim "exists independently" of the labor contract, courts evaluate whether the right is "nevertheless substantially dependent on analysis" of a labor contract. Id. at 764–65 (quoting Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1032 (9th Cir. 2016)). There is no substantial dependence "when the meaning of contract terms is not the subject of dispute," and "the bare fact that a [labor contract] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Id. at 765 (quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)). "Interpretation" is construed narrowly, "it means something more than 'consider,' 'refer to,' or 'apply.' " Alaska Airlines

Inc. v. Schurke, 898 F.3d 904, 921 (9th Cir. 2018) (citation omitted). The existence of a "hypothetical connection" between the claims and the terms of the CBA is not enough to preempt the claim. Id. (citation omitted). "Nor is it enough that resolving the state law claim requires a court to refer to the CBA and apply its plain or undisputed language—for example, 'to discern that none of its terms is reasonably in dispute[.]'" Id. at 921-922. (citation omitted.) To balance the policy considerations underlying the complete preemption doctrine, "defensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA will not suffice to preempt a state law claim." Humble v. Boeing Co., 305 F.3d 1004, 1008 (9th Cir. 2002). Ultimately, the forum preemption inquiry is an inquiry into the claim's "legal character," *not* an inquiry as to the merits of a claim, so as to ensure the claim is decided in the proper forum. Id. at 924.

**1. Plaintiff's Causes of Action Involve Rights Conferred by State Law.**

Plaintiff alleges that every one of his nine causes of action are created by a "California statute and/or public policy that confers a fundamental employee civil right on Plaintiff as an individual, whether or not any union represents him." (Mot. at 10.) The Court agrees. The rights Plaintiff asserts under his causes of action are "conferred by state law, as opposed to by a labor contract." Garcia, 993 F.3d at 764; see Ackerman v. W. Elec. Co., 860 F.2d 1514, 1517 (9th Cir. 1988) (FEHA handicap discrimination claim not preempted); Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1523-1528 (9th Cir. 1995); Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203 (9th Cir. 2007) (holding that "FEHA employment discrimination claims are not ipso facto preempted by § 301 of the LMRA"); Perez v. Foster Poultry Farms, No. 22-CV-691-JLT-SAB, 2024 WL 279112, *3 (E.D. Cal. Jan. 24, 2024)(collecting cases). The same is true of the Labor Code's protection of safety complaints and public-policy wrongful termination, Paige v. Henry J. Kaiser Co., 826 F.2d 857, 863 (9th Cir. 1987) (wrongful-discharge claim grounded in California health-and-safety policy not preempted), and of statutory whistleblower protection under section 1102.5, which likewise exists independently of any CBA. See Valles, 410 F.3d at 1076 (nonnegotiable state-law protections that cannot be waived or altered by agreement are not founded on the CBA). Further, Defendant does not argue that any of Plaintiff's rights were created by the CBA but rather that the claims require interpretation of the governing CBA provisions. (See NOR.) Accordingly, the Court finds that the rights are grounded in California law.

**2. Plaintiff's Causes of Action Are Not "Substantially Dependent" On An Analysis of the Collective Bargaining Agreement.**

Defendant argues that all of Plaintiff's claims are intertwined and substantially dependent upon the terms of the governing CBA provisions covering probationary status, seniority, job classifications, work assignments, bidding procedures, discipline, and discharge. (NOR at 6.) Plaintiff contends that "preemption requires an actual dispute over the meaning of the contract terms[,]" and that Plaintiff does not dispute the terms of the contract. (Mot. at 12.) The Court agrees and finds that Defendant's argument is insufficient to confer subject matter jurisdiction over the claims. The Court discusses the claims below.

### a. Accommodations Claims (First and Second Causes of Action)

Defendant alleges that Plaintiff's failure to accommodate and interactive-process claims are "completely preempted" because they require an interpretation of the CBA— "namely, whether a reasonable accommodation was available"— as a prerequisite to establishing a prima facie element of Plaintiff's claims.[1] (NOR at 6.) Defendant further alleges that under FEHA, the availability of a reasonable accommodation, such as through position reassignments, requires the interpretation of Articles 2 (probationary employees), 4 (employer security), 24 (seniority, daily work assignments, temporary assignments), and 25 (new employee scheduling) of the CBA. (Id. at 6-8.) Plaintiff argues that his accommodation and interactive process claims turn on the facts and not on the meaning of the CBA. (Mot. at 12-13.) He also contends that Sysco "points to no CBA provision that addresses accommodation" and instead refers to provisions in the CBA whose meanings Defendant does not claim are contested. (Mot. at 13.)

Plaintiff's first cause of action alleges that Plaintiff was "able to perform the essential duties of [his] current position or a vacant alternative position to which [he] could have been reassigned with reasonable accommodation." (Compl. ¶ 36.) However, Sysco allegedly failed to provide "any reasonable accommodation for Plaintiff's disability" and instead "repeatedly pressured Plaintiff to return to work in unhealth[y] and unsafe conditions in violation of his medical restrictions." (Id.) Plaintiff's second cause of action again maintains that Sysco failed to engage with Plaintiff in good faith and failed to provide reasonable available accommodations. (Id. ¶ 46.)

The Court finds that Plaintiff's rights are not "substantially dependent on analysis" of the CBA. Garcia, 993 F.3d at 764. The inquiry of what accommodations were reasonably available to Plaintiff does not require the Court to analyze the terms of the CBA. See Nelson v. Foster Poultry Farms, 706 F. Supp. 3d 1007, 1020 (E.D. Cal. 2023). Although Defendant points out the potential applicability of CBA provisions as to seniority and assignment rules "as to how and in what manner to assign job duties to new employees lacking seniority" (Opp'n. at 15), Defendant does not point out whether the CBA says anything about "possible management responses when an employee is determined to be unfit to continue in a position without work restrictions." Jimeno, 66 F.3d at 1524. "[A] mere possible reliance on a CBA provision does not suffice to trigger preemption." Humble, 305 F.3d at 1010; see Jimeno, 66 F.3d at 1527 (9th Cir.

---

[1] In its Opposition, Defendant introduces a new theory that CBA's provisions narrowed the scope of his position so as to determine whether "performing freezer work was an 'essential function of his position'" and whether Sysco could accommodate Plaintiff as he wished. (Opp'n. at 14-16.) The Court finds that determining "essential functions" are fact-intensive inquiries. See Cripe v. City of San Jose, 261 F.3d 877, 887-888 fn.12 (9th Cir. 2001) ("A highly fact-specific inquiry is necessary to determine what a particular job's essential functions are."). The fact that the CBA may be potentially relevant for the determination of whether freezer work was an essential function does not trigger preemption. Humble v. Boeing Co., 305 F.3d 1004, 1010-1011 (9th Cir. 2002).

1995) (outlining how FEHA regulations provide three categories to be considered in assessing the employer's efforts to accommodate disabled employees that would not necessarily require interpreting the terms of the CBA.) Accordingly, Plaintiff's claims are not inextricably intertwined with the CBA. Id. at 1526.

**b. Discipline and Termination Claims (Third through Seventh Causes of Action)**

Defendant alleges that Plaintiff's discrimination, harassment, retaliation, whistleblower, and wrongful termination claims "require interpretation" of CBA Articles 2 (discharge of probationary employees) and 5 (discipline procedures and offenses warranting discharge) to determine whether Sysco's grounds for terminating Plaintiff were pretextual or discriminatory. (NOR at 8-9; Opp'n. at 16.)

Plaintiff alleges that he was one of approximately three African American employees at his work site. (Compl. ¶ 54.) He alleges that he was subjected to harassing conduct because of his disability and/or race and that the harassing conduct was severe and pervasive. (Id. ¶ 59.) As an example, Plaintiff alleged that he was subjected to racial jokes during lunch breaks by being called "boy" on a daily basis. (Id. ¶ 13.) Plaintiff also alleges that he made complaints to Sysco about the serious health and safety hazards at its facility, including: "black ice on freezer floors creating slip hazards; inadequate personal protective equipment for sub-zero freezer work causing cold-induced injuries; pallets scattered on warehouse floors creating tripping hazards and OSHA violations; broken glass and spilled materials in work areas; dangerous equipment operation practices including pressure to jump off moving equipment; unstable pallet loads creating crush hazards; and witnessing serious co-worker injuries including a back injury from a falling pallet." (Id. ¶ 103.) Defendants allegedly used pressure tactics to return Plaintiff to "freezer work in violation of his physician's orders and before he was healed," disciplined him with two attendance points for seeking medical treatment for his work-related injury despite advance notice, subjected him to heightened disciplinary and performance standards in comparison to similarly situated employees without disabilities, suspended him without pay, and terminated his employment. (Id. ¶¶ 74, 84, 93, 104.)

Plaintiff's rights are not "substantially dependent on analysis" of the labor contract. Garcia, 993 F.3d at 764. The inquiry of whether an employer's stated reason for termination was pretextual is resolved through an examination of the employer's motive and not necessarily on the provisions included in the CBA. Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 749 (9th Cir. 1993); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988). Plaintiff's allegation that he was regularly subjected to racial harassment during his lunch breaks "cannot be resolved by interpreting the [CBA]." Ramirez, 998 F.2d at 749. Further, Plaintiff "cannot be discriminated against under certain conditions; hence it would be nonsensical to look to the terms of the [CBA] to determine if the alleged discrimination against [him] is excusable under the terms of that agreement." Id. Accordingly, the Court finds that the claims are not inextricably intertwined with the CBA. Id. at 1526.

### c. Derivative Claims (Eighth through Ninth Causes of Action)

Finally, Defendant alleges that Plaintiff's failure-to-prevent and wrongful termination claims are derivative of the underlying FEHA claims, which they contend are completely preempted. (NOR at 9.) Because, as described above, the underlying claims are not completely preempted, the derivative claims are not equally preempted as well. Accordingly, the complete preemption doctrine does not support this Court's subject matter jurisdiction over Plaintiff's claims. (Id.)

## D. The Court Declines to Award Plaintiff's Attorneys' Fees and Costs.

Finally, Plaintiff requests attorneys' fees and costs as incurred as a result of the removal in the amount of $8,217.50. (Mot. at 16; Dkt. No. 15-2 ¶¶ 5-7.) Under 28 U.S.C. § 1447(c), an order remanding a case "may" require payment of just costs and expenses, including attorney fees incurred because of the removal. Fees are appropriate only where the removing party "lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005). "Section 301 preemption is a large body of case law that remains confusing." Sellar v. Woodland Park Zoological Soc'y, No. 2:23-CV-00627-TL, 2023 WL 5425490 (W.D. Wash. Aug. 23, 2023) (citing Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024 (9th Cir. 2016)); see Robles v. Gillig LLC, 771 F. Supp. 2d 1181, *1185 (N.D. Cal. 2011); Jamal Foster v. Sysco Los Angeles, Inc. et al. Additional Party Names: Emmanuel Duran, No. 2:26-CV-06502-SVW-SSC, 2026 WL 3153315, at *8 (C.D. Cal. Oct. 19, 2026). The Court finds that Defendant's arguments were not frivolous and declines to award attorneys' fees and costs.

For the foregoing reasons, the Court **GRANTS** the Motion and **ORDERS** that this case be **REMANDED** to the Superior Court of California for the County of Riverside. Plaintiff's request to award fees and costs in the Motion is **DENIED**.

**IT IS SO ORDERED.**